COURT OF APPEALS
DECISION
DATED AND FILED

May 11, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP453**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV293

IN COURT OF APPEALS
DISTRICT IV

SCOTT AUSTIN,

   PLAINTIFF-RESPONDENT,

ESTATE OF MARION ROESLER,

   INVOLUNTARY-PLAINTIFF-RESPONDENT,

   V.

RICKY ROESLER AND ASSOCIATED BANK, N.A.,

   DEFENDANTS-RESPONDENTS,

ANGELA CAMPBELL,

   DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Columbia County: TROY D. CROSS, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Marion Roesler established two payable-on-death ("P.O.D.") bank accounts that designated her husband and her three children as beneficiaries.  At the time of Marion's death, she was predeceased by her husband and Kathleen Ketterer, one of her children.  Scott Austin, the child of Kathleen, commenced an action in the Columbia County Circuit Court seeking a declaratory judgment that he is entitled to Kathleen's share of Marion's P.O.D. accounts. Angela Campbell and Ricky Roesler, Marion's surviving children, disagreed and argued in the circuit court that they are entitled to Kathleen's share of Marion's P.O.D. accounts.  Angela, Ricky, and Scott each moved for summary judgment. The circuit court granted summary judgment to Scott, ruling that Kathleen's share passed to Scott pursuant to the "anti-lapse" statute, WIS. STAT. § 854.06 (2021-22).[1]  Angela appeals, and we affirm.

## BACKGROUND

¶2     There is no dispute as to the following material facts.

¶3     In 2008 and 2011, Marion Roesler established two P.O.D. accounts at Bank Mutual.[2]  At the time Marion opened each of the accounts, she executed P.O.D. beneficiary designation forms ("P.O.D. forms") that designated as beneficiaries her husband, Glenn Roesler, and her three children, Kathleen

---

[1]  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  As will be discussed, Bank Mutual was acquired by Associated Bank in 2018.

2

Ketterer, Angela Campbell, and Ricky Roesler. The P.O.D. forms do not designate contingent beneficiaries or otherwise state how the funds are to be distributed if a listed beneficiary predeceases Marion. Both Glenn and Kathleen predeceased Marion, leaving Angela and Ricky as the surviving named beneficiaries. Kathleen is survived by her child, Scott Austin.

¶4 Scott commenced an action against Angela and Ricky in the circuit court seeking a declaratory judgment that he is entitled to Kathleen's one-third share of Marion's P.O.D. accounts.[3] Angela and Ricky answered the complaint separately, each asserting that Kathleen's share passed to Angela and Ricky as surviving named beneficiaries.[4]

¶5 Scott filed a motion for summary judgment, arguing that Kathleen's share passes to him pursuant to WIS. STAT. § 854.06(3), Wisconsin's anti-lapse statute. In the circuit court, Ricky agreed that there are no disputed facts and requested that the court grant summary judgment in his and Angela's favor. In the circuit court, Angela first argued that there are disputed facts that prevent a grant of summary judgment. The circuit court initially agreed with Angela and denied Scott's summary judgment motion. Angela later changed her position and filed a

---

[3] Scott also joined the Estate of Marion Roesler as an involuntary plaintiff pursuant to WIS. STAT. § 803.03. The Estate participated in the action only with respect to a separate bank account that is not at issue in this appeal. For that reason, we do not address the Estate further in this opinion.

Scott also named Associated Bank as a defendant. In its answer, Associated Bank did not advocate for an interpretation of the P.O.D. forms but, instead, opted to hold the P.O.D. account funds until the courts resolve this dispute. *See* WIS. STAT. § 705.06(2).

[4] The parties to this appeal do not discuss Glenn's share of the funds in the P.O.D. accounts. The parties apparently assume that Glenn's share is distributed either to Angela and Ricky in equal shares or to Angela, Ricky, and Austin in equal shares depending on how we resolve the issues in this appeal. We make the same assumption.

3

motion for summary judgment, adopting in full the reasoning in Ricky's summary judgment brief. With Angela and Ricky both agreeing that there are no disputed material facts, Scott renewed his motion for summary judgment. The circuit court granted Scott's motion and ruled that Scott is entitled to Kathleen's share pursuant to § 854.06(3). Angela appeals.[5]

¶6 Additional material facts are set forth in the following discussion.

## DISCUSSION

¶7 On appeal, Angela argues that Kathleen's share of Marion's P.O.D. accounts passes to Angela and Ricky as surviving named beneficiaries, and not to Scott as Kathleen's surviving issue pursuant to WIS. STAT. § 854.06(3). We begin by setting forth our standard of review and the governing principles regarding declaratory judgment, summary judgment, contract interpretation, and statutory interpretation.

## I. Standard of Review and Governing Principles Regarding Declaratory Judgment, Summary Judgment, Contract Interpretation, and Statutory Interpretation.

¶8 The parties do not dispute that this controversy was properly resolved under the declaratory judgment procedure. *See Olson v. Town of Cottage Grove*, 2008 WI 51, ¶¶27-29, 309 Wis. 2d 365, 749 N.W.2d 211. A decision to grant or deny declaratory relief often falls within the discretion of the

---

[5] The Estate and Associated Bank have notified this court that they do not intend to file a brief in this appeal. Ricky has not filed a notice of appeal or brief in this court. As a result, in light of the fact that the circuit court order is adverse to Ricky, the order of the circuit court is final as to Ricky.

circuit court. *Olson v. Farrar*, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1. "However, when the exercise of such discretion turns upon a question of law, we review the question independently of the circuit court's determination." *Id.*

¶9 In this case, both parties filed motions for summary judgment in the circuit court. This court reviews a grant or denial of summary judgment de novo, using the same methodology employed by the circuit court. *Bank of N.Y. Mellon v. Klomsten*, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364. Summary judgment is proper, and the moving party is entitled to judgment as a matter of law, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); *see Bank of N.Y. Mellon*, 381 Wis. 2d 218, ¶31. When determining whether there is a "genuine issue of material fact," the affidavits and other proof submitted by the parties "are viewed in a light most favorable to the opposing party." *L.L.N. v. Clauder*, 209 Wis. 2d 674, ¶15, 563 N.W.2d 434 (1997). Additionally, in deciding whether there are factual disputes, "the circuit court and the reviewing court consider whether more than one reasonable inference may be drawn from undisputed facts; if so, the competing reasonable inferences may constitute genuine issues of material fact." *H & R Block E. Enters., Inc. v. Swenson*, 2008 WI App 3, ¶11, 307 Wis. 2d 390, 745 N.W.2d 421.

¶10 This appeal requires us to interpret the P.O.D. forms executed by Marion. "[A] P.O.D. beneficiary designation is a contract made between a 'financial institution' and a 'depositor.'" *Mueller v. Edwards*, 2017 WI App 79, ¶8, 378 Wis. 2d 689, 904 N.W.2d 392 (citing WIS. STAT. § 705.01(8), (9)). The interpretation of a contract is a question of law that we review independently.

*Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶32, 330 Wis. 2d 340, 793 N.W.2d 476.

¶11    This appeal also requires us to interpret the anti-lapse statute and the statutes governing P.O.D. accounts.  When interpreting statutes, Wisconsin courts begin "with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry."  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).  "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."  *Id.*; *see* WIS. STAT. § 990.01(1).  The application of a statute to undisputed facts is a question of law that we review de novo.  *Mueller*, 378 Wis. 2d 689, ¶5.

## II.  The Anti-Lapse Statute Applies to Kathleen's Share of Marion's P.O.D. Accounts.

¶12    The parties agree that Marion's P.O.D. accounts are governed by WIS. STAT. ch. 705.  WISCONSIN STAT. § 705.04 concerns the payment of funds in a P.O.D. account and provides, in pertinent part: "if any P.O.D. beneficiary predeceases the original payee …, the amount to which the predeceased P.O.D. beneficiary would have been entitled passes to any of his or her issue who would take under [WIS. STAT. §] 854.06(3)."  Sec. 705.04(2)(d).  The parties do not dispute the following:  Kathleen was a P.O.D. beneficiary on Marion's P.O.D. accounts; Kathleen predeceased Marion (the "original payee" as referred to in the statute); and Kathleen was survived by Scott—*i.e.*, her "issue."  *See id.*  Thus, pursuant to the undisputed facts and the plain language of § 705.04(2)(d),

6

Kathleen's share of Marion's P.O.D. accounts passes to Scott if Scott "would take under" § 854.06(3). We next consider § 854.06.

¶13    WISCONSIN STAT. § 854.06 is often called Wisconsin's "anti-lapse" statute. *See Firehammer v. Marchant*, 224 Wis. 2d 673, 675 n.1, 591 N.W.2d 898 (Ct. App. 1999). This statute defines the individuals covered by § 854.06 and provides, in relevant part:

> (2) SCOPE OF COVERAGE. This section applies to revocable provisions in a governing instrument executed by the decedent that provide for an outright transfer upon the death of the decedent to any of the following persons:
>
> (a) … issue of a grandparent ….

Sec. 854.06(2)(a). The parties do not dispute the following: Marion's P.O.D. accounts are "governing instruments"; the beneficiary designations in the P.O.D. accounts are "revocable provisions … executed by the decedent that provide for an outright transfer upon the death of the decedent"; and Kathleen is the "issue of a grandparent." *See id.* Therefore, according to the undisputed facts and the plain language of § 854.06(2), the anti-lapse provision in § 854.06(3) applies to the named beneficiaries on Marion's P.O.D. accounts, including Kathleen.

¶14    We now discuss WIS. STAT. § 854.06(3) which states as follows: "Subject to sub. (4), if a transferee under a provision described in sub. (2) does not survive the decedent but has issue who do survive, the issue of the transferee take the transfer per stirpes."[6] Sec. 854.06(3). On the facts here, § 854.06(3) requires

---

[6] *See* WIS. STAT. § 854.04(1) (stating that per stirpes distribution requires allocating one share for each deceased child who left issue, with each deceased child's share passing to his or her issue).

that the funds Kathleen would have received from the P.O.D. accounts be transferred to Austin, Kathleen's sole issue, unless Marion had a "contrary intent" as referenced in § 854.06(4). That section provides, in pertinent part:

> (4) Contrary intent.
>
> (a) Subsection (3) does not apply if any of the following applies:
>
> 1. The governing instrument provides that a transfer to a predeceased beneficiary lapses.
>
> ….
>
> (bm) If the person who executed the governing instrument had an intent contrary to any provision in this section, then that provision is not applicable to the transfer. Extrinsic evidence may be used to construe the intent.

Sec. 854.06(4)(a)1., (bm).

¶15 Angela argues that WIS. STAT. § 854.06(3) does not apply to Marion's P.O.D. accounts for three reasons: (1) the anti-lapse statute does not apply to predeceased beneficiaries of a P.O.D. account; (2) the P.O.D. forms establish that a transfer to a predeceased beneficiary lapses pursuant to § 854.06(4)(a)1.; and (3) Marion's will is extrinsic evidence of her contrary intent pursuant to § 854.06(4)(bm), which requires a trial to resolve a material factual dispute. We address each argument in turn.

## A. The Anti-Lapse Statute Applies to the P.O.D. Accounts.

¶16 Angela argues that Kathleen is not what Angela refers to as a "covered transferee" under WIS. STAT. § 854.06(2) because, in Angela's view and as a matter of law, the share of a predeceased P.O.D. beneficiary passes to the surviving named beneficiaries on the P.O.D. account, not to the predeceased

named beneficiary's issue pursuant to § 854.06(3). We reject this argument for several reasons.

¶17 First, this argument fails because Angela did not raise this argument in the circuit court. As Scott points out, Angela's summary judgment motion adopted the arguments in Ricky's summary judgment brief in full, and Ricky's brief filed in the circuit court agrees that WIS. STAT. § 854.06 governs this dispute. Nothing in Ricky's circuit court brief or any argument made by Angela in the circuit court mentions the legal authorities Angela raises in this argument on appeal or otherwise argues that Kathleen is not a "covered transferee" under § 854.06(2). Therefore, Angela forfeited this argument by failing to raise it in the circuit court. *See* ***Schonscheck v. Paccar, Inc.***, 2003 WI App 79, ¶10, 261 Wis. 2d 769, 661 N.W.2d 476 ("Generally, we do not consider legal issues which are raised for the first time on appeal."); ***State v. Huebner***, 2000 WI 59, ¶12, 235 Wis. 2d 486, 611 N.W.2d 727 ("Raising issues at the trial court level allows the trial court to correct or avoid the alleged error in the first place, eliminating the need for appeal.").

¶18 Second, if we consider the legal authorities on which Angela relies, her argument is untenable. Angela attempts to support this argument by relying on portions of WIS. STAT. ch. 705. Specifically, Angela relies on the following subparts of ch. 705: the definition of "party" under WIS. STAT. § 705.01(6); the definition of "P.O.D. account" under § 705.01(8); the definition of "P.O.D. beneficiary" under § 705.01(9); and the requirement under WIS. STAT. § 705.08 that chapter 705 be construed "to ensure reasonable certainty of legal result for those who establish a multiple-party or agency account." However, Angela makes no viable argument that ties those statutory subparts to her proposition. She also cites, in support of her argument, ***Mueller***, 378 Wis. 2d 689, ¶¶7-9, and ***Estate of***

9

*Sheppard ex rel. McMorrow v. Schleis*, 2010 WI 32, ¶¶24, 26, 324 Wis. 2d 41, 782 N.W.2d 85. But, those opinions do not discuss the issue of the interpretation of WIS. STAT. § 854.06(3). In addition, Angela cites 12 C.F.R. §§ 330.10(a) and 330.10(b)(2) (2023). However, those regulations concern insurance for bank deposits and do not negate the terms of § 854.06(3) as Angela contends.

¶19    Essentially, Angela is arguing that WIS. STAT. § 854.06 does not apply in this case because, as a matter of law, the P.O.D. accounts must pass to the surviving beneficiaries named on the P.O.D. forms. However, as explained above, WIS. STAT. § 705.04(2)(d) specifically provides that a predeceased named beneficiary's share of a P.O.D. account passes to that beneficiary's issue pursuant to § 854.06(3). Angela's interpretation of legal authorities would render § 705.04(2)(d) meaningless, and we cannot reach the conclusion Angela asserts. *See Belding v. Demoulin*, 2014 WI 8, ¶17, 352 Wis. 2d 359, 843 N.W.2d 373 ("Statutory interpretations that render provisions meaningless should be avoided."). Therefore, the anti-lapse statute under § 854.06 applies to Kathleen's share of Marion's P.O.D. account.

¶20    Third, Angela contends that all "payable-on-death … customers," including Marion, "are informed that Wisconsin payable-on-death accounts have a lapse provision." For this, Angela points to the terms of a "Deposit Account Agreement" that are allegedly available on Associated Bank's website. According to Angela, these account terms are consistent with the legal authorities that she relies on and establish that a predeceased named beneficiary's share passes to the surviving beneficiaries. However, Angela does not provide any record citations for this evidence, and we will not consider evidence that is not in the record. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("An appellate court's review is confined to those parts of the record made available to

it."); ***Roy v. St. Lukes Med. Ctr.***, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256 ("We have no duty to scour the record to review arguments unaccompanied by adequate record citation."). Further, Angela does not establish based on any record citation when those purported Associated Bank terms became effective or that Marion would have had notice of those terms.

¶21 Fourth, Angela relies on statements made by Associated Bank's counsel and what Angela refers to as its "decedent specialist." Angela purported to record these statements during a phone call and submitted a transcript and summaries of those statements to the circuit court in a "declaration." Angela also submitted an affidavit of another person who allegedly listened in on those calls. In response, Scott points out that both of the individuals disputed the accuracy of the statements in those documents, and Scott moved to disregard those documents in the circuit court. Scott also argues that the affidavit and declaration should not be considered because those do not satisfy the requirements of WIS. STAT. § 802.08(3). We agree with Scott that these statements do not affect the applicability of WIS. STAT. § 854.06, but we reach this conclusion for a different reason than Scott argues. At best, these statements are the individuals' personal interpretations of the language of Marion's P.O.D. account and the law governing such accounts. Because we interpret contracts and statutes independently, whether the statements are accurately quoted or not, those would not in any case be binding and do not alter our conclusion that the anti-lapse statute applies to Kathleen's share of the P.O.D. accounts. *See* ***Town Bank***, 330 Wis. 2d 340, ¶32; ***Mueller***, 378 Wis. 2d 689, ¶5.

¶22 In sum, we conclude that WIS. STAT. § 854.06 applies to Kathleen's share of Marion's P.O.D. accounts.

### B. The P.O.D. Forms Do Not Provide That a Transfer to a Predeceased Beneficiary Lapses.

¶23    Next, Angela argues that WIS. STAT. § 854.06(3) does not apply in these circumstances based on the exception set forth in § 854.06(4)(a)1. As noted, this exception provides that § 854.06(3) does not apply if "[t]he governing instrument provides that a transfer to a predeceased beneficiary lapses." Sec. 854.06(4)(a)1. Angela argues that this exception applies because one of the P.O.D. forms includes the following language: "Any surviving depositor or P.O.D. beneficiary is not required to survive the death of a decedent depositor by any specific period." (Emphasis omitted.)[7] According to Angela, this language demonstrates that a transfer to a predeceased P.O.D. beneficiary on that account lapses and passes to the surviving beneficiaries, not the issue of the predeceased beneficiary. For the following reasons, we conclude that this language on the P.O.D. form does not trigger this exception.

¶24    Angela first argues that the language on the P.O.D. form is analogous to language analyzed in *Brazeau v. Stewart*, 270 Wis. 610, 72 N.W.2d 334 (1955). In that opinion, our supreme court stated that a transfer in a will to a predeceased child lapsed because that transfer was to the testator's children "living

---

[7] Angela suggests that this language is included on the P.O.D. forms for both of the P.O.D. accounts at issue. However, she provides a record citation for only the account number ending in 3278. Our review of the record reveals that the P.O.D. form for the other account (account number ending in 1621) includes similar language, but omits the phrase "or P.O.D. beneficiary": "Any surviving depositor is not required to survive the death of a decedent depositor by any specific period." (Emphasis omitted.) Because this language on the 1621 account P.O.D. form applies only to surviving depositors and not surviving P.O.D. beneficiaries, our analysis is limited to the language on the 3278 account P.O.D. form.

at the time of [the testator's] death." ***Brazeau***, 270 Wis. at 612-13.[8] But the situation here is not analogous, and the P.O.D. form terms lead to a different conclusion. Those terms do not state that the beneficiaries must survive the account holder and do not provide any indication of how the funds are to be distributed if a beneficiary predeceases the decedent depositor. Instead, reasonably interpreted, the language on the P.O.D. form merely provides that, if the beneficiary survives the account holder, then the beneficiary is entitled to receive their share of the P.O.D. account.

¶25     Angela also argues that the P.O.D. form provides that the transfer to Kathleen lapses because WIS. STAT. § 854.03 imposes a 120-hour survival requirement. This statute provides, in part:

> Except as provided in sub. (5), if property is transferred to an individual under a statute or *under a provision in a governing instrument that requires the individual to survive an event* and it is not established that the individual survived the event by at least 120 hours, the individual is considered to have predeceased the event.

Sec. 854.03(1) (emphasis added). This statute also provides the following relevant exception:

> (5) EXCEPTIONS.
>
> (am) This section does not apply if any of the following conditions applies:
>
>      ….

---

[8] Angela also cites to a portion of Professor Erlanger's handbook in which he references ***Brazeau v. Stewart***, 270 Wis. 610, 72 N.W.2d 334 (1955), for the proposition that "words of survivorship express the transferor's intent that, if the beneficiary predeceases, the transfer truly lapses—*i.e.*, that the antilapse rule *not* apply." Howard S. Erlanger, *Wisconsin's New Probate Code, A Handbook for Practitioners* 105 (1998).

> 2. The statute or governing instrument indicates that the individual is not required to survive an event by any specified period.

Sec. 854.03(5)(am)2.

¶26 According to Angela, Kathleen was required to survive Marion because WIS. STAT. § 854.03 "establishes a survival requirement of 120 hours for transfer at death accounts." (Emphasis omitted.) Angela asserts that the P.O.D. form—which she contends is consistent with exception under § 854.03(5)(am)2.— negates only the 120-hour requirement, not the underlying requirement that the beneficiary survive. This argument fails because Angela misreads § 854.03. Contrary to Angela's argument, § 854.03 does not establish a survival requirement for all beneficiaries on P.O.D. accounts. Instead, as highlighted above, the 120-hour survival requirement applies only to "a provision in a governing instrument *that requires the individual to survive an event*." Sec. 854.03(1) (emphasis added). If a governing instrument does not require a beneficiary to survive an event in order to take, then § 854.03 does not apply. In the present case, as explained above, the P.O.D. form does not require that the beneficiaries survive Marion's death or any other event. In sum, the P.O.D. form does not provide that a transfer to a predeceased beneficiary lapses pursuant to § 854.06(4)(a)1.[9]

## C. Marion Did Not Have a Contrary Intent to the Anti-Lapse Statute.

¶27 Angela also argues that there are genuine issues of material fact about whether Marion had a contrary intent to the application of the anti-lapse

---

[9] Angela also cites the following quotation from Professor Erlanger's handbook: "[B]eneficiaries under a revocable trust are now explicitly required to survive in order to take." Erlanger, *supra* at 9. This quotation does not affect our conclusion because there is no evidence that Marion's P.O.D. account was a revocable trust.

statute pursuant to the exception under WIS. STAT. § 854.06(4)(bm). To repeat, this exception provides: "If the person who executed the governing instrument had an intent contrary to any provision in this section, then that provision is not applicable to the transfer. Extrinsic evidence may be used to construe the intent." Sec. 854.06(4)(bm). "Extrinsic evidence" is defined at WIS. STAT. § 854.01(1) as "evidence that would be inadmissible under the common law parole evidence rule or a similar doctrine because the evidence is not contained in the governing instrument to which it relates." Angela does not dispute that it is her burden to establish Marion's contrary intent. *See Firehammer v. Marchant*, 224 Wis. 2d 673, 678, 591 N.W.2d 898 (Ct. App. 1999) ("[T]he rule of the law in this state is, as we have already stated, that if a beneficiary predeceases a testator, the anti-lapse statute works to give the share to the issue, not to the surviving beneficiaries, unless a contrary intent is clearly established.").

¶28     First, Angela points to a portion of each P.O.D. form that states: "upon the death of such depositor, ownership passes to the P.O.D. beneficiar[ies] named hereon." According to Angela, this language indicates that Marion did not intend for Scott to take Kathleen's share because Scott was not named on the P.O.D. forms. This argument fails because the absence of Scott's name on the P.O.D. forms establishes only Marion's intent that Scott is not a named beneficiary of the P.O.D. accounts and that he therefore does not receive funds from the P.O.D. accounts if Kathleen is living. That Marion did not designate Scott as a beneficiary does not establish that Marion intended that the anti-lapse statute should not apply if Kathleen predeceased her.

¶29     Second, Angela argues that Marion's will is extrinsic evidence that Marion had an intent contrary to the application of WIS. STAT. § 854.06. In her will, Marion bequeathed her property first to her husband; then, if her husband

15

predeceased her, to her three children, Kathleen, Ricky, and Angela; then, if one of her children predeceased her, to the "residual heirs." In *Austin v. Roesler*, No. 2021AP1887-FT, unpublished slip op. (WI App Apr. 28, 2022), this court interpreted the phrase "residual heirs" in Marion's will and determined that Marion intended that a predeceased child's share should pass to Marion's surviving children, not to the issue of the predeceased child.

¶30    In the present case, Angela argues that Marion's will is extrinsic evidence establishing Marion's intent that Kathleen's share of the P.O.D. accounts should pass to the surviving beneficiaries, Ricky and Angela, and not to Kathleen's issue, Scott. We are not persuaded. There are several material differences between Marion's will and the P.O.D. forms. For instance, the parties agree that Marion's will was executed in 1977, whereas the P.O.D. forms were executed more than thirty years later, in 2008 and 2011. There is no dispute that Marion's will disposed of all of Marion's property on her death, except the funds in the P.O.D. accounts. During that passage of time, Marion decided on a different distribution of these funds than is reflected in her will. As partial confirmation that Marion intended a distribution of the P.O.D. accounts different from the distribution of assets in her will, Marion's will designated her husband as the primary heir and her children as contingent heirs, whereas the P.O.D. forms designated her husband and three children as primary beneficiaries. Based on these undisputed material differences between Marion's will and the P.O.D. forms, there is no reasonable basis to infer that Marion intended for the disposition of her P.O.D. accounts to mirror the disposition of her will. Therefore, the terms of

16

Marion's will do not create a genuine issue of material fact as to Marion's intent that would defeat summary judgment.[10]

## CONCLUSION

¶31 For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[10] Scott argues that Angela forfeited this argument because it was not raised in either Angela's or Ricky's summary judgment briefs. Angela responds that she did not forfeit this argument because Ricky's attorney raised this issue during oral arguments and the circuit court orally rejected it. We assume without deciding that Angela did not forfeit this argument and conclude that this argument fails for the reasons stated in this opinion.